[S. F. No. 10694. In Bank.—May 28, 1926.]

## W. E. DEAN et al., Respondents, v. FRED SHINGLE, Appellant.

[1] CORPORATIONS—MISAPPROPRIATION BY OFFICER—ACTION BY TRUS-TEES IN BANKRUPTCY—NATURE OF TRANSACTION.—In an action by the trustees of a bankrupt corporation to recover a sum of money alleged to have been wholly lost to the corporation, the allegations of the complaint showing that the president and general manager of the corporation, while certain persons were directors misappropriated the moneys of the corporation by the sale

of his automobile to the corporation without any resolution, act, or other authority of the board of directors, and that the demand of the trustees for the repayment of the money paid by said president and general manager to himself in the transaction, and their offer to restore the automobile to him, were rejected, bring the case, as to said president and general manager, within the rule that a trustee may not take part in any transaction concerning the trust in which he has an interest, present or contingent, adverse to that of his beneficiary.

[2] AGENCY—AGENT DEALING WITH HIMSELF.—An agent authorized to act for a principal in a given negotiation cannot deal with himself; he cannot, when authorized to buy property for his principal, sell his own property to it, without communicating that fact to the principal; he cannot unite his personal and representative character in the same transaction, and if he does, the transaction may be treated as voidable, at the election of the *cestui que trust,* without regard to whether it is fair and honest or not.

[3] CORPORATIONS — AGENCY. — The doctrine that an agent authorized to act for a principal in a given negotiation cannot deal with himself applies to all persons who occupy fiduciary relations, but it is especially applicable to the officers of a corporation when acting for and on behalf of the company. They cannot use their official position to benefit themselves individually.

[4] ID. — SALE OF OFFICER'S AUTOMOBILE TO CORPORATION — MISAPPROPRIATION OF CORPORATE FUNDS—LIABILITY OF DIRECTORS.—The acts of the president and general manager of the corporation in selling his own automobile to the corporation without any resolution, act, or other authority of the board of directors amounted to a wilful and deliberate misappropriation of the funds of the corporation, and rendered those who were directors of the corporation at the time the transaction took place jointly and severally liable.

[5] ID.—RATIFICATION — NOTICE — RIGHT OF CREDITORS — ESTOPPEL — TRUSTEE IN BANKRUPTCY—RIGHT TO MAINTAIN ACTION.—The transaction by which the president and general manager of the corporation sold his automobile to the corporation, having never been ratified by the corporation, or the means by which the corporation acquired the automobile having never been brought home to the notice of the corporation or of any of its officers or directors other than the president and general manager, the creditors of the corporation cannot be held to be estopped from maintaining an action to recover the moneys paid to said president and general manager for said automobile; and since the trustees of the bankrupt

2. See 1 Cal. Jur. 797; 21 R. C. L. 829.
3. See 6 Cal. Jur. 1079.
4. See 7 Cal. Jur. 34.

corporation are representing the creditors, they (the trustees) may maintain the action to enforce the liability of directors to creditors and stockholders for money misappropriated by an officer of the corporation.

[6] BANKRUPTCY—TRUSTEES—ACTIONS.—After the appointment and qualification of the trustee, all actions for the recovery or protection of the assets of the estate of the bankrupt must be brought by, or in the name of, the trustee.

[7] ID.—CREDITORS' RIGHTS.—Creditors' rights, which are enforceable under state laws, accrue to a trustee in bankruptcy.

[8] CORPORATIONS — MISAPPROPRIATION — CONSTITUTIONAL LIABILITY OF DIRECTORS—HOW ENFORCED.—The constitutional liability of directors for money misappropriated by officers of a corporation cannot be enforced in an action at law, but only by a bill in equity in which all the creditors are parties, or are represented, and in which there can be an accounting and equities adjusted after all the facts have been ascertained.

[9] ID.—ACTIONS — EQUITY — RELIEF.— Legal and equitable relief are administered in this state in the same forum, and according to the same general plan. A party cannot be sent out of court merely because his facts do not entitle him to relief at law, or merely because he is not entitled to relief in equity, as the case may be; he can be sent out of court only when, upon his facts, he is entitled to no relief, either at law or in equity.

[10] ID.—PLEADING—EQUITY.—A complaint showing that the president and general manager of a corporation, while certain persons were directors, misappropriated the moneys of the corporation by selling his own automobile to the corporation without any resolution, act, or other authority of the board of directors, and praying for judgment for the specific sum alleged to have been lost to the corporation through the misappropriation "and for such other and further relief as may be meet and appropriate," states facts which make the action one properly cognizable in the equity side of the court.

[11] ID.—MISAPPROPRIATION—ACTIONS—TRUSTEES IN BANKRUPTCY.— The trustees of the bankrupt corporation may properly maintain an action against a director of a corporation on his constitutional liability to recover moneys misappropriated by the president and general manager of the corporation by selling his own automobile to the corporation without any resolution, act, or other authority of the board of directors, as such trustees represent all the creditors, and are acting in their behalf, and the recovery, if any be had, constitutes a fund for the benefit of all

7. See 4 Cal. Jur. 57.

8. See 7 Cal. Jur. 35.

9. See 1 Cal. Jur. 312; 1 R. C. L. 331.

the creditors, and if, after satisfying their claims, any of the fund remains, it will belong to the stockholders.

[12] ID.—ACCOUNTING—BANKRUPTCY.—While such an action is not brought primarily to enforce an accounting, which is required only for the purpose of the distribution of the fund which may be recovered for all the creditors, the bringing of the suit implies that such accounting will be ordered; and the bankrupt corporation being in liquidation, any amount recovered will pass into the custody of the court having jurisdiction of the bankrupt's estate for distribution, precisely as it would have gone in a creditor's bill, or in some analogous proceeding.

[13] ID.—CREDITOR AFTER MISAPPROPRIATION—RIGHT TO SHARE IN RECOVERY.—A creditor of the bankrupt corporation who became such after the misappropriation is entitled to share in any recovery had by the trustees.

[14] ID.—LIABILITY OF DIRECTORS—SECTION 3, ARTICLE XII, CONSTITUTION—SURETYSHIP.—The liability of directors of a corporation under section 3 of article XII of the constitution to the creditors and stockholders for moneys embezzled or misappropriated by the officers of the corporation, during the term of office of such directors, is one of suretyship.

[15] ID.—PENALTY—STATUTES.—A statute which provides for making one liable for the debts of another, and prescribes how and under what circumstances he shall be held thus liable, is penal in its nature.

[16] ID.—MISAPPROPRIATION—PROOF OF LOSS.—Before directors of a corporation can be held liable for moneys so misappropriated by an officer as to make the officer misappropriating liable, and authorizing the creditors and stockholders to sue, it must be established, first, that there has been a misappropriation; and, second, that a loss to the corporation has resulted.

[17] ID.—JUDGMENTS—VALUE OF AUTOMOBILE.—In an action by the trustees of a bankrupt corporation against a director of said corporation to recover a sum of money wrongfully paid by the president and general manager of said corporation to himself for an automobile sold by him to the corporation, the trial court was in error in entering judgment against such director for the full amount of the misappropriation, and in refusing to ascertain and make an allowance for the value of the automobile at the time of its purported sale to the corporation, where it was admitted that the automobile had some value—alleged in the complaint not to exceed five hundred dollars.

[18] ID.—VALUE OF USE OF AUTOMOBILE—EVIDENCE.—In such action, the defendant director was not entitled to prove the reasonable or

14.   See 7 Cal. Jur. 33.
15.   See 23 Cal. Jur. 612; 25 R. C. L. 765.

any value of the use of the automobile during the time it was in the service ,of the corporation, as the value of its use cannot be said to be a profit or benefit derived through the misappropriation of the corporation's money.

[19] ID.—NEGLIGENCE—SURETYSHIP.—In such action, the plaintiffs cannot recover at all on the second count of their complaint, which is based upon the alleged negligence of the defendant director, as the obligation of suretyship imposed by the constitution on a director does not extend to damages resulting from mere negligence in the management of the affairs of the corporation, not amounting to a misappropriation of funds.

---

(1) 14a C. J., p. 194, n. 70.   (2) 2 C. J., p. 704, n. 96, 99.   (3) 14a C. J., p. 117, n. 21.   (4) 14a C. J., p. 180, n. 46.   (5) 14a C. J., p. 181, n. 52.   (6) 7 C. J., p. 246, n. 88.   (7) 7 C. J., p. 225, n. 37.   (8) 14a C. J., p. 191, n. 21.   (9) 31 Cyc., p. 111, n. 1.   (10) 14a C. J., p. 191, n. 21.   (11) 7 C. J., p. 225, n. 37, p. 336, n. 94, p. 417, n. 95.   (12) 7 C. J., p. 336, n. 94.   (13) 7 C. J., p. 336, n. 94.   (14) 14a C. J., p. 180, n. 46.   (15) 36 Cyc., p. 1182, n. 41.   (16) 14a C. J., p. 180, n. 46.   (17) 14a C. J., p. 189, n. 75.   (18) 14a C. J., p. 189, n. 75.   (19) 14a C. J., p. 177, n. 88.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. Daniel C. Deasy, Judge. Reversed.

The facts are stated in the opinion of the court.

Devoto, Richardson & Devoto and Anthony S. Devoto for Appellant.

Henry Ach and I. M. Golden for Respondents.

WASTE, C. J.—The plaintiffs, as trustees of the United States Aircraft Corporation, a bankrupt, brought this action to recover the sum of two thousand five hundred dollars, alleged to have been "wholly lost" to the corporation through misappropriation of corporate funds by the defendant Mulford, a director, and the president and general manager of the corporation; the defendant Shingle having also been a director of the corporation at the time of the alleged misappropriation. The defendant Shingle alone appeared in the action, and demanded that the cause be tried by a jury. When the evidence was all in, the plaintiffs moved the court for a directed verdict. The motion was

granted, and the jury returned a verdict in favor of plaintiffs and against the defendant Shingle for the full amount prayed for. The court "accepted" the verdict, and judgment thereon was entered without any formal findings being made. After motion for a new trial made and denied, the defendant Shingle appealed from the judgment.

The complaint is in two counts: The first count is based upon the liability created by section 3 of article XII of the state constitution, which provides that "the directors or trustees of corporations and joint-stock associations shall be jointly and severally liable to the creditors and stockholders for all moneys embezzled or misappropriated by the officers of such corporation or joint-stock association, during the term of office of such director or trustee." The corporate nature of the United States Aircraft Corporation, its adjudication as a bankrupt, and the election and qualification of the plaintiffs as trustees are sufficiently averred. Then follow allegations to the effect that, prior to the bankruptcy of the corporation, the defendant Shingle was elected, and continued to be up to the time of the filing of the complaint, a director and secretary of the corporation. Coincident with the election of Shingle as director and secretary, defendant Mulford was also made a director, and was elected president and general manager of the corporation, and continued to act as such. It is then alleged that shortly after his election as president and general manager, and without any resolution, act, or other authority of the board of directors, Mulford sold to the corporation, for the sum of two thousand five hundred dollars, an automobile owned by him, which was not reasonably worth more than the sum of five hundred dollars. There are other averments sufficiently charging Mulford with acting in the dual capacity of seller and buyer in the transaction, and misappropriating the moneys of the corporation to the extent of the two thousand five hundred dollars which he "accepted" and "received" in payment for the automobile. Plaintiffs demanded repayment of the money paid by Mulford to himself in the transaction, and offered to restore and deliver the automobile to him. The money was not repaid, and the offer to restore the automobile was not accepted. The allegation follows that the "sum of $2500.00 has been wholly lost to said United States Aircraft Corporation and to the said bankrupt estate."

[1] The allegations of the first cause of action of the complaint bring the case, as to Mulford, within the rule that, with certain exceptions, a trustee may not take part in any transaction concerning the trust in which he has an interest, present or contingent, adverse to that of his beneficiary. (Civ. Code, sec. 2230.) [2] An agent authorized to act for a principal in a given negotiation cannot deal with himself. He cannot, when authorized to buy property for his principal, sell his own property to it, without communicating that fact to the principal. He cannot unite his personal and representative character in the same transaction. If he does, the transaction may be treated as voidable, at the election of the *cestui que trust,* without regard to whether it is fair and honest or not. (*Graves* v. *Mono Lake H. M. Co.,* 81 Cal. 303, 320 [22 Pac. 665]; *Wickersham* v. *Crittenden,* 93 Cal. 17, 29 [28 Pac. 788]; *Sims* v. *Petaluma Gas Light Co.,* 131 Cal. 656, 659 [63 Pac. 1011].) [3] The doctrine applies to all persons who occupy fiduciary relations, but it is especially applicable to the officers of a corporation when acting for and on behalf of the company. They cannot use their official position to benefit themselves individually. (*Pacific Vinegar etc. Works* v. *Smith,* 145 Cal. 352, 361 [104 Am. St. Rep. 42, 78 Pac. 550].) Yet, that is precisely what Mulford did in the instant case. [4] His acts amounted to a wilful and deliberate misappropriation of the funds of the Aircraft Corporation, and loss to the corporation was caused thereby. The transaction, according to appellant, amounted merely to a voidable transaction on which no liability on the part of appellant as a director could be predicated. We cannot agree with the contention. The allegations of the complaint and the supported facts clearly bring the case within the rule laid down in *Fox* v. *Hale & Norcross Min. Co.,* 108 Cal. 369, 426 [41 Pac. 308]. The transaction by Mulford amounted in effect to an embezzlement, and there was "a misappropriation of funds entrusted to an officer for a special purpose, by devoting them to some unauthorized purpose." (*Winchester* v. *Howard,* 136 Cal. 432, 444 [89 Am. St. Rep. 153, 69 Pac. 77].) The conclusion is, therefore, inescapable that Mulford's acts rendered the directors of the Aircraft Corporation jointly and severally liable.

The second count, which purports to state a cause of action against the defendants for gross negligence of Shingle and

fraud of Mulford, in connection with the sale of the automobile by Mulford to the corporation, may be disregarded. The question in the case is not one of negligence or fraud, but is, Are the facts alleged sufficient in an action upon the constitutional liability? (*Winchester* v. *Howard, supra,* p. 447.)

[5] Appellant contends that, as the constitutional provision does not expressly give a right of action to the trustees of a bankrupt corporation to enforce the liability of directors to creditors and stockholders for money misappropriated by the officers of the corporation, plaintiffs here cannot maintain this suit. It does not appear that the corporation ever ratified the transaction by which Mulford sold the automobile to it. While the machine was used in its service, the fraud perpetrated upon it, or the means by which the automobile was acquired, were never brought home to the notice of the corporation or of any of its officers or directors other than Mulford. Therefore, the creditors could not be held to be estopped from maintaining the action. The trustees are here representing the creditors. Section 47 of the act to establish a uniform system of bankruptcy throughout the United States provides that "as to all property not in the custody of the bankruptcy court, [the trustees] shall be deemed vested with all the rights, remedies, and powers of a judgment creditor holding an execution duly returned unsatisfied." (36 U. S. Stats. at Large, 840.)

[6] After the appointment and qualification of the trustee, all actions for the recovery or protection of the assets of the estate of the bankrupt must be brought by, or in the name of, the trustee. (1 Remington on Bankruptcy, sec. 1718.)

[7] Creditors' rights, which are enforceable under state laws, accrue to a trustee in bankruptcy. (*Schroeter* v. *Abbott,* 185 Cal. 146, 149, 150 [196 Pac. 39].) The action here is one, in effect, to recover assets of the corporation which constitute a fund to which all the creditors may look for satisfaction of their claims. (*Winchester* v. *Mabury,* 122 Cal. 522, 524 [55 Pac. 393].) The cases cited by appellant in support of his contention that the proper action has not been brought (*Ellsworth* v. *Bradford,* 186 Cal. 316 [199 Pac. 335]; *People* v. *Bank of Shasta,* 172 Cal. 507 [157 Pac. 606]; *Williams* y. *Carver,* 171 Cal. 658 [154 Pac. 472]) are not in point. They merely hold that, under the law as it existed

at the time they were decided, the liability of stockholders to the creditors of a bank constituted no part of its property or assets, and could not be enforced, or the amount of the liability collected, by the superintendent of banks in liquidating the affairs of an insolvent institution. The present action, we conclude, was properly brought by the trustees of the bankrupt corporation.

[8] Appellant now takes the position that the action brought by plaintiffs here was in its nature one at law, and correctly contends that the constitutional liability of directors for money misappropriated by officers of a corporation cannot be enforced in such an action, but only by a bill in equity in which all the creditors are parties, or are represented, and in which there can be an accounting and equities adjusted after all the facts have been ascertained. (*Winchester* v. *Mabury,* 122 Cal. 522 [55 Pac. 393]; *Winchester* v. *Howard,* 136 Cal. 432, 447 [89 Am. St. Rep. 153, 69 Pac. 77].) [9] But legal and equitable relief are administered in this state in the same forum, and according to the same general plan. A party cannot be sent out of court merely because his facts do not entitle him to relief at law, or merely because he is not entitled to relief in equity, as the case may be. He can be sent out of court only when, upon his facts, he is entitled to no relief, either at law or in equity. Consequently, an action does not now, as formerly, fail because a plaintiff has made a mistake as to the form of his remedy. If the case which he states entitles him to any remedy, either legal or equitable, his complaint is not to be dismissed because he has prayed for a judgment to which he is not entitled. If the facts stated are such as address themselves to the equity side of the court, the appropriate relief will be granted by the court sitting as a court of equity. (1 Cal. Jur., p. 312, par. 6.) [10] In the case at bar, the facts pleaded by the plaintiffs clearly address themselves to the equity side of the court. The prayer of the complaint is for judgment for the specific sum alleged to have been lost to the corporation through the misappropriation of Mulford, "and for such other and further relief as may be meet and appropriate." The action was one, therefore, properly cognizable in the equity side of the court below.

[11] For another reason we are of opinion that the trustees in bankruptcy may maintain this action in its

present form. The reasons advanced in the decisions why
a bill in equity is proper, where the creditors institute an
action to recover on the constitutional liability, are met and
fully satisfied by the situation covered when the action is
brought by the trustees of a bankrupt corporation. In such
a case there are present all the essential elements of an action
in equity. The trustees in bankruptcy represent all the
creditors, and are acting in their behalf. The recovery, if
any be had, constitutes a fund for the benefit of all the
creditors. If, after satisfying their claims, any of the fund
remains, it will belong to the stockholders. [12] While
the action is not brought primarily to enforce an accounting,
which is required only for the purpose of the distribution of
the fund which may be recovered for all the creditors, the
bringing of the suit implies that such accounting will be
ordered. In this case, the corporation is in liquidation, and
any amount recovered will pass into the custody of the court
having jurisdiction of the bankrupt's estate for distribution,
precisely as it would have gone in a creditor's bill, or
in some analogous proceeding. (See *Winchester* v. *Howard,
supra,* at p. 446.)

[13] The contention of appellant that it does not appear
that the trustees in bankruptcy represent only creditors of
the Aircraft Corporation who were such at the time of the
sale of the automobile, for which reason, it is argued, plain-
tiffs are not entitled to a judgment against him, is without
merit. A creditor who became such after the misappropria-
tion is entitled to share in any recovery had. (*Winchester*
v. *Howard, supra.*)

The vital question in this case is: To what extent were
the directors of the Aircraft Corporation rendered liable to
the creditors and stockholders by the misappropriation of
corporate funds by Mulford? [14] It is the contention of
appellant that the liability of directors under the constitu-
tional provision is remedial or contractual and that of sure-
ties, rather than penal, and that in the absence of proof of
loss or damage to the corporation neither the creditors nor
stockholders can recover judgment against the directors, or
any of them. From this premise, he argues that, as the
Aircraft Corporation received from Mulford an automobile,
admittedly of considerable value, and used it for many
months in its business, no loss resulted from the use of the
corporation's funds by Mulford, and, consequently, this ac-

tion must fail. Respondents, on the other hand, contend that the liability of the directors is penal in its nature, primary and absolute, and by way of providing compensation to creditors, and not to cover loss to the corporation; that the directors must pay the full amount of the money misappropriated, and there can be no deduction because of any benefit the corporation may have received. Statutes making officers and directors of a corporation responsible to its creditors for losses growing out of the wrongful or fraudulent conduct of such officers or directors are regarded by most courts as of a penal nature, and as not arising out of contracts. (*Brown* v. *Major,* 164 Fed. 673, 677 [90 C. C. A. 489].) [15] In this state, it is well settled that a statute which provides for making one liable for the debts of another, and prescribes how and under what circumstances he shall be held thus liable, is penal in its nature. (*Snell* v. *Bradbury,* 139 Cal. 379, 382 [73 Pac. 150]; *Moss* v. *Smith,* 171 Cal. 777, 784 [155 Pac. 90]; *Miller* v. *White,* 50 N. Y. 137, 142.) But section 3 of article XII of the constitution has received a different construction in the previous decisions of this court, in which it has been held that the liability of directors of corporations to the creditors and stockholders for moneys embezzled or misappropriated by the officers of the corporation, during the term of office of such directors is one of suretyship, and, therefore, one of contract. (*Winchester* v. *Howard,* 136 Cal. 432, 444 [89 Am. St. Rep. 153, 69 Pac. 77].) In that case, it was held that the constitution did not change the nature of the liability of directors of corporations for loss resulting from misappropriations of trust property that always existed, ''except that for its purpose it is limited to *moneys* misappropriated.'' The court said (p. 444): ''The constitution merely makes the directors sureties for their fellow-directors and for the officers of the corporation for moneys, when so misappropriated as to make the officer misappropriating liable, and authorizing the creditors and stockholders to sue. . . . Nor do [we] appreciate the importance of the question whether the law is penal or not. It is not penal in the technical sense, as it allows no recovery as a punishment, but only to compensate for a loss. But the liability created is that of suretyship, in which the innocent always suffers for the guilty, and therefore the surety may always stand upon the very letter of his bond.'' This con-

struction of the constitution has been followed by the federal courts (*Brown* v. *Major, supra*), and by the district courts of appeal of this state (*Hercules Oil Co.* v. *Hocknell,* 5 Cal. App. 702, 705 [91 Pac. 341]; *Major* v. *Walker,* 23 Cal. App. 465, 467 [138 Pac. 360]), and was, in effect, approved in *Moss* v. *Smith,* 171 Cal. 777, 786 [155 Pac. 90]. Respondents contend that the court took an erroneous view in *Winchester* v. *Howard, supra,* and that what was said in that case about the liability of directors being that of sureties is *dictum* and ought not to be followed. We deem it unnecessary to enter into a discussion of the contention. The rule there announced was foreshadowed in the earlier case, *Fox* v. *Hale & Norcross Min. Co., supra,* and has been followed and approved in the later cases. In the Fox case, the court, speaking through Mr. Chief Justice Beatty, said that it "was the intention of the framers of the Constitution to make each director of a corporation severally liable, whether individually culpable or not, *for certain kinds of losses* to the corporation occurring during his term of office; that is to say, he is made liable for embezzlement or misappropriation of corporate funds by officers of the corporation." The word "misappropriation," said the Chief Justice, is to be construed to mean "the misapplication of funds entrusted to an officer for a particular purpose, by devoting them to some unauthorized purpose, and does not apply to the payment of an extravagant price for services or materials properly appertaining to the business of the corporation—which is this case." In *Winchester* v. *Howard, supra,* the court said (p. 445): ". . . when an officer of a corporation knowingly appropriates funds entrusted to him, for unlawful and unauthorized purposes, and loss ensues to the corporation, the directors are liable under this clause of the constitution."

We are not unmindful of the purpose for which the particular clause of the constitution was included among its provisions. In the debates of the constitutional convention it was said that its adoption would make trustees and directors more careful in the management of their business; make them sureties for the good conduct of those in whose custody they place the funds of the corporation; make them responsible for the discharge of their duties. (1 Debates and Proceedings of the Constitutional Convention, p. 396 et seq.)

The design plainly was to prevent speculation and misappropriation of corporate funds. The liability imposed by the provisions is that of surety, and when loss occurs the innocent surety suffers for another's fault. Directors take office knowing the responsibility they assume in so doing. In the eye of the law they do so as freely and voluntarily as they would do if they signed a bond agreeing to be responsible for the conduct of the corporate officers. (*Winchester* v. *Howard, supra,* p. 448.) [16] But before the directors can be held liable for moneys so misappropriated as to make the officer misappropriating liable, and authorizing the creditors and stockholders to sue, it must be established, first, that there has been a misappropriation; and, second, that a loss to the corporation has resulted. The decisions, *supra,* declare that to be the proper construction to place upon the provision of the constitution under which it is sought to hold the appellant liable in this case. [17] The misappropriation of Mulford was clearly established; but the exact amount of the loss to the Aircraft Corporation has not been fixed. The transaction by which the president and general manager paid to himself the sum of two thousand five hundred dollars for the automobile worth much less than that sum was an unlawful and unauthorized appropriation of the money of the corporation, but it is admitted that the automobile had some value—alleged in the complaint not to exceed five hundred dollars. The loss to the corporation was, therefore, something less than the sum of money misappropriated. Under all the circumstances, it seems only reasonable and proper to hold that the corporation profited by the transaction to the extent of the actual value of the automobile when received and placed in its service. For that reason, the trial court was in error in entering judgment against appellant for the full amount of two thousand five hundred dollars, alleged in the first count of the complaint, and proved to have been misappropriated by Mulford, and in refusing to ascertain and make an allowance for the value of the automobile at the time of its purported sale to the corporation.

[18] But we agree with the respondents that appellant was not entitled to prove the reasonable, or any, value of the use of the automobile during the time it was in the service of the corporation. The actual value of the automobile

may be deducted from the amount of money of the corporation which was misappropriated; but the value of its use, which would no doubt be the same as that of any other automobile of like description rightfully purchased for the corporation, cannot be said to be a profit or benefit derived through the misappropriation of the money by Mulford.

[19] For the reason that the obligation of suretyship imposed by the constitution does not extend to damages resulting from mere negligence in the management of the affairs of the corporation, not amounting to a misappropriation of funds, in the sense of that term as we have referred to it, plaintiffs cannot recover at all under the theory of the case relied on in the second count of the complaint.

The judgment is reversed.

Shenk, J., Curtis, J., Seawell, J., Richards, J., Lawlor, J., and Lennon, J., concurred.

Rehearing denied.