[Civ. No. 658.   Fifth Dist.   Nov. 28, 1966.]

WILLIAM R. IVY, Plaintiff and Respondent, v. RAYMOND V. PLYLER, Defendant and Appellant.

---

*Assigned by the Chairman of the Judicial Council.

Deadrich, Bates & Lund and Kenneth H. Bates for Defendant and Appellant.

Werdel & Wallace and Arthur E. Wallace for Plaintiff and Respondent.

STONE, J.—This is an appeal from a personal judgment against appellant, Raymond V. Plyler, secretary of Lupine Oil Operations, a corporation, under the doctrine of *alter ego*.

Plyler filed articles of incorporation of Lupine Oil Operations with the Secretary of State on August 29, 1959. The original incorporators and first directors were appellant, his wife, and his uncle. No stockholders meetings were held, no other board of directors meeting was held, no application was presented to the Corporation Commissioner to issue stock, and no stock was issued. Appellant was authorized, as secretary of the corporation, to sign checks on the corporation bank account. He abused this authority by treating the corporation bank account as a personal account, commingling his own funds with those of the corporation and withdrawing corporation funds for his personal use.

Respondent entered into contracts with the corporation for the rental of oil well drilling equipment, one on July 16, the other on July 31, 1962. The corporation was insolvent when the contracts were made, and the indebtedness that accrued pursuant to the contracts was never paid. Respondent filed this action against appellant to recover the amount due under the contracts, on the theory of *alter ego*.

After service of the complaint seeking to charge appellant personally with the amounts due under the contracts, appel-

lant filed his voluntary petition in bankruptcy. Appellant then filed a supplemental answer alleging that the indebtednesses sued upon were listed in his bankruptcy schedule.

The trial court found that although appellant had obtained a discharge in bankruptcy, the indebtedness to respondent was not discharged thereby. The grounds for so holding were that appellant had personal knowledge the corporation was insolvent when the contracts were made and, with this knowledge and while the corporation was indebted to respondent on the contracts, he applied funds belonging to the corporation to his own personal use, to the detriment of the creditors of the corporation, including respondent. Upon this premise, the court further found that appellant's discharge in bankruptcy did not discharge his liability incurred under the *alter ego* doctrine because of "the defalcation and misappropriation of funds by said Defendant, RAYMOND V. PLYLER, while acting as an officer of the Corporation, and in a fiduciary capacity as herein found."

Appellant does not question the finding that he used the corporation as his *alter ego*; he centers his attack upon the finding that the debt was not discharged in bankruptcy. Appellant first contends the pleadings are faulty because the complaint does not allege that he was acting in a fiduciary capacity or that his misappropriation or defalcation of corporation funds was perpetrated with an intent to defraud respondent.

We find these contentions without merit. The complaint, framed on the theory of *alter ego,* was filed before appellant filed in bankruptcy. The supplemental answer filed by stipulation, as noted in the pretrial conference order, raised the defense of bankruptcy. This was new matter raised by the answer and deemed controverted by respondent under the provisions of Code of Civil Procedure section 462.

Precisely this point was raised in *Crespi & Co.* v. *Giffen,* 132 Cal.App. 526 [23 P.2d 47], wherein the court held that proof of misrepresentation and fraud was properly admitted in evidence where the defendant pleaded a discharge in bankruptcy even though the plaintiff had not pleaded fraud. (See also *United States Credit Bureau* v. *Manning,* 147 Cal.App.2d 558, 561 [305 P.2d 970].)

Appellant argues, also, that the pretrial order which superseded the pleadings does not specify appellant's fraud, misappropriation or defalcation as an issue. The order does provide: "By stipulation of counsel at the time of the pretrial

conference, the defendant Raymond V. Plyler filed a supplemental answer alleging that since the commencement of the action he has been adjudicated a bankrupt and that he listed the indebtedness sued for in his bankruptcy schedule and that if subsequently discharged in bankruptcy, his discharge will constitute a complete defense to the action.''

It appears to us the language ''if subsequently discharged in bankruptcy'' places in issue the question of the discharge. Any doubt as to whether the discharge in bankruptcy was, in fact, an issue is dispelled by the record, which reflects that it was considered so by both parties and the court. Appellant advanced his discharge in bankruptcy as a defense, introduced evidence in support thereof, and argued the point to the trial court. Respondent likewise introduced evidence bearing upon appellant's plea of discharge in bankruptcy. Appellant is in no position to now argue that the question was not properly in issue before the trial court. (*Pearson* v. *Norton*, 230 Cal.App. 2d 1, 14 [40 Cal.Rptr. 634].)

Appellant next asserts the evidence does not support the trial court's finding that the discharge in bankruptcy was ineffective as to the indebtedness incurred under the contracts. As we understand appellant, he argues that since respondent alleged liability under the doctrine of *alter ego* and the court so found, it was inconsistent to also find that the debt was not discharged because of appellant's misappropriation and defalcation as a director acting in a fiduciary capacity. In short, appellant's position as to the pleadings, pretrial order, and sufficiency of the evidence, is that the theory upon which recovery is had and the reason for holding the debt is not discharged must be the same. We do not believe the contention is sound.

The doctrine of *alter ego* upon which respondent recovered is based upon the misuse of a corporation by an individual for wrongful or inequitable personal purposes. In such case the court merely disregards the corporate entity and holds the individual responsible for acts knowingly and intentionally done in the name of the corporation. (*Platt* v. *Billingsley*, 234 Cal.App.2d 577, 582 [44 Cal.Rptr. 476], and cases cited therein.) Whether the acts giving rise to liability under the *alter ego* doctrine are of a nature that precludes discharge from liability through bankruptcy is a separate question. The evidence and the findings on the two separate issues need not be coextensive.

Even so, argues appellant, the trial court relied upon

section 17a(4) of the Bankruptcy Act in determining the debt was not discharged, and that statute is not applicable to the facts of this case. In pertinent part, section 17a reads as follows: "A discharge in bankruptcy shall release a bankrupt from all of his provable debts, whether allowable in full or in part, except such as . . . (4) were created by his fraud, embezzlement, misappropriation or defalcation while acting as an officer or in any fiduciary capacity; . . ." (11 U.S.C.A. § 35.)

We gather from appellant's argument that he does not view fraud as a separate ground for excepting a debt from discharge under section 17a(4), but as a necessary element cohering to the other three grounds, embezzlement, misappropriation or defalcation. We do not so interpret the statute. The words "fraud, embezzlement, misappropriation" are separated by commas, and the alternative is clearly reflected by the disjunctive "or" used between the last two words of the sequence, "misappropriation or defalcation."

The question raised by appellant does not appear to have been adjudicated, but we find a discussion of section 17a(4) by Cowans in his work, Bankruptcy Law and Practice, wherein he says, at page 285: "As a matter of fact, it is a good deal easier to assert that all the forms of forbidden conduct, namely, fraud, embezzlement, misappropriation and defalcation were committed by the bankrupt, than to undertake to isolate and prove a particular one. The law has assumed that there must have been Congressional intent to cover different things by these different terms and has struggled to find substantial differences without distinguished success."

Cowans' conclusion that section 17a(4) specifies four distinct grounds for excepting a debt from discharge appears to us to be a reasonable interpretation of the statute. Hence we turn to the court's finding that appellant committed "misappropriation" and "defalcation" within the meaning of the statute.

Although we find no California case defining defalcation, there are a number of definitions from other jurisdictions noted in 163 A.L.R. 1008. Generally speaking, the cases have held that as used in the act, "defalcation" is not a synonym for fraud, embezzlement or misappropriation, but has a broader meaning. ■ Defalcation means "the failure of a fiduciary to account for money received in his fiduciary capacity." (*First Citizens Bank & Trust Co.* v. *Parker,* 225

N.C. 480 [35 S.E.2d 489, 492, 163 A.L.R. 1003].) To constitute defalcation there must be a showing of bad faith or misconduct, as distinguished from negligence or mistake (*Aetna Cas. & Surety Co.* v. *Lauerman,* 12 Wis.2d 387 [107 N.W.2d 605, 609]) and it may consist of a mere deficit resulting from misconduct. (*Kaufman* v. *Lederfine,* 49 F.Supp. 144.)

The word "misappropriation" has been applied, if not defined, in a few California cases. In *Dean* v. *Shingle,* 198 Cal. 652 [246 P. 1049, 46 A.L.R. 1156], a corporate director who sold his own automobile, valued at $500, to the corporation for $2,500 was held to be guilty of misappropriation of corporate funds within the meaning of the Bankruptcy Act. The provision of law upon which liability of the appellant, an innocent fellow director, was based has since been repealed, but it does not negate the discussion of misappropriation of corporate funds by a director-officer. In *Pacific Indem. Co.* v. *Hargreaves,* 36 Cal.App.2d 338 [98 P.2d 217], a bank president made a loan of $12,000 of the bank's funds to a third person who turned the money over to the president. Neither the bank president nor the third person was in a financial position to justify the loan, and the court held that "An officer of a bank who knowingly, through another person and without disclosing the fact, makes loans for his own private gain is guilty of misapplication of such funds." (P. 344.)

Courts in other jurisdictions have discussed the word "misappropriation." In *Haggerty* v. *Badkin,* 72 N.J.Eq. 473 [66 A. 420, at page 427], the court said:

"It is hardly necessary to advance arguments to show that, the trust relation being established, the use of the fund for his individual benefit was a misappropriation within the meaning of that word in the act." (See *Bannon* v. *Knauss,* 57 Ohio App. 288 [13 N.E.2d 733, 735].)

We conclude that appellant, as secretary of the corporation, was guilty of misappropriation and defalcation when he withdrew corporate funds for his personal use, under the circumstances reflected by the evidence.

There remains appellant's argument that since he was acting as a director and as the secretary of the corporation respondent's right to recover from him must rest upon his actions in these capacities. He pursues this argument by pointing out there is no provision in the California Corporations Code subjecting a director or an officer of a corporation to liability, other than to judgment creditors and then only for a

wrongful distribution of assets. (Corp. Code, §§ 824, 825, 826.) Respondent was not a judgment creditor.

Sections 824, 825 and 826 simply define liability of directors under certain circumstances relating to the purchase of shares, payment of dividends, and withdrawal and distribution of assets among shareholders. This does not mean that a director or an officer of a corporation cannot be held liable upon the theory of *alter ego* for acts other than those covered by sections 824, 825 and 826. Appellant paraphrases the legislative preemption theory that by enacting the Corporations Code the Legislature intended to supersede all rights at common law and in equity to recover from one who wrongfully uses a corporation to his own advantage and to the detriment of his creditors. The plethora of *alter ego* cases refutes appellant's contention.

To summarize, respondent proved his causes of action upon the theory of *alter ego,* while appellant's defense of discharge in bankruptcy failed because he, as secretary of the corporation and with knowledge of the corporation's liability under the contracts, misappropriated corporate funds to his personal use at a time when the corporation was insolvent.

The judgment is affirmed.

Conley, P. J., concurred.