[Civ. No. 8270. First Appellate District, Division One.—April 13, 1932.]

P. C. POURROY et al., Appellants, v. H. C. GARDNER et al., Respondents.

522

Blood & Freeman and Freund & Semon for Appellants.

Bordwell, Mathews & Wadsworth, Ray W. Bruce and John H. Mathews for Respondents.

KNIGHT, J.—This is an appeal by plaintiffs from a judgment of dismissal entered after demurrers were sustained to the fourth amended complaint, in an action brought by three stockholders of Pacific Stores, Incorporated, a defunct foreign corporation, against the former directors of said corporation and others to recover certain sums of money aggregating more than a million dollars.

The complaint contained three causes of action, stated separately, and according to its allegations plaintiffs sought

to maintain the action on behalf of themselves, the other stockholders and the corporation itself. The first cause of action was brought under the authority of section 309 of the Civil Code, as amended in 1917 (Stats. 1917, p. 657), the portions of which, so far as we are here concerned, read as follows: "Unless they shall have been first permitted ·or authorized so to do by the commissioner of corporations, directors of corporations must not make dividends except from the surplus profits arising' from the business thereof; . . . For a violation of the provisions of this section, the directors under whose administration the same may have happened . . . are, in their individual or private capacity, jointly and severally liable *to the corporation, and to the creditors thereof,* to the full amount of the capital stock so divided, withdrawn, paid out, or reduced or debt contracted . . . " (Italics ours.) The specific charge made was that at all times during the corporation's existence it was operated at a loss; that there never were any surplus profits arising from the business, and that in January, 1924, in violation of the provisions of said code section, the directors declared and paid dividends out of the capital of the corporation in the sum of $21,269.61, for which amount plaintiffs asked judgment.

The second and third causes of action were for the recovery of damages on account of false and fraudulent representations plaintiffs claimed were made to the stockholders at the time they purchased their stock, as to the value of the assets of the corporation. In this regard it was alleged in the second cause of action that as a result of fraud and conspiracy Pacific Stores, Incorporated, was organized by certain of the defendants for the purpose of exchanging a large amount of its stock, share for share, for that of another foreign corporation named "Pacific Stores Corporation", whose capital "was greatly impaired" and whose stock "of little or no value", and thereupon to dispose of the remainder of the stock in Pacific Stores, Incorporated, "to the general public at face or par value"; that thereafter, in August, 1923, in consummation of such conspiracy and fraud, and pursuant to a written resolution passed by the board of directors for such purpose, Pacific Stores, Incorporated, did exchange its stock of the value of $875,000 share for share for that of Pacific Stores Corporation, which it was alleged

was of no greater value than $50,000; that thereafter in selling the remainder of the stock of Pacific Stores, Incorporated, to plaintiffs and others it was falsely and fraudulently represented that the stock received by Pacific Stores, Incorporated, in said exchange was of the value of $875,000; and "that by reason of the acts aforesaid, plaintiffs have been damaged in the sum of $850,000".

The substance of the charge made in the third cause of action was as follows: That in violation of the Corporate Securities Act of this state and as a result of fraud and conspiracy the defendants caused to be transferred to the defendant Shaw, a stock-broker, for the purpose of selling the same, stock of the Pacific Stores, Incorporated, of the value of $560,000, for which said corporation received only $336,000, or sixty per cent of the value of the stock transferred; that at the time plaintiffs and others purchased their stock in said corporation it was falsely and fraudulently represented to them that said corporation received eighty per cent of the value of the stock turned over to Shaw, "to the total damage of the said corporation and the plaintiffs herein in the sum of $224,000.00".

With respect to all three causes of action it was alleged that in August, 1925, Pacific Stores, Incorporated, was adjudged bankrupt and a trustee appointed; that on March 1, 1927, after the estate of the bankrupt was fully administered upon, said bankruptcy proceedings were terminated, and the bankrupt and the trustee were finally discharged; that ever since the termination of said bankruptcy proceedings said corporation has been without a board of directors or other officers. Furthermore, it was also alleged "that none of the facts" relating to the alleged unlawful dividends were discovered by the plaintiffs until the month of October, 1927, when plaintiffs caused an audit to be made of the books of Pacific Stores, Incorporated; that "none of the matters" relating to the second cause of action were discovered by plaintiffs until October, 1927, when an audit was made of the books of both corporations; and that "none of the matters" relating to the third cause of action "were discovered by plaintiffs" until October, 1927. The year during which the transaction set forth in the third cause of action took place was not stated; and nowhere in the complaint was it alleged when or about when plaintiffs and the other stock-

holders acquired their stock. The fourth amended complaint was filed in June, 1929, and it is stated in plaintiffs' brief that the original complaint (which is not embodied in the record) was filed in January, 1928.

So far as the record discloses only two of the several parties named as defendants appeared in the action, and they demurred to the complaint and to each of the three causes of action set forth therein upon numerous grounds, among them being insufficiency of facts, misjoinder of parties plaintiff, that the several causes of action set forth therein were improperly united, and that the same were barred by the statute of limitations. The demurrers were sustained without leave to amend as to the first cause of action, and with leave to amend as to the remaining two; but plaintiffs having declined further to amend, judgment of dismissal was entered as to all, from which this appeal was taken.

█ It is well-settled law in this state that so long as a corporation is willing to perform its duty toward its stockholders by instituting and conducting in good faith necessary legal proceedings in its own behalf the stockholders have no cause for complaint, and that with the right of the corporation to sue and be sued concerning corporate rights or liabilities, the stockholders cannot interfere, except when the governing directors or trustees refuse to act or are guilty of fraud in the maintenance or defense of the action (see *Difani* v. *Riverside County Oil Co.*, 201 Cal. 210 [256 Pac. 210], and authorities therein cited); █ and it is equally well settled that before any such action by stockholders will be entertained it must appear from the allegations of the complaint that demand was first made upon the officers of the corporation to institute the appropriate proceedings in that behalf and that there has been a refusal on their part so to do; or facts must be alleged which clearly show that such demand would have been futile. (*Fornaseri* v. *Cosmosart Realty etc. Corp.*, 96 Cal. App. 549 [274 Pac. 597]; *Difani* v. *Riverside County Oil Co.*, *supra*; *Eggers* v. *National Radio Co.*, 208 Cal. 308 [281 Pac. 58].) Furthermore, to any action so instituted, the corporation must be made a party. (*Southern Cal. Home Builders* v. *Young*, 45 Cal. App. 697 [188 Pac. 586].) It is also held that if a corporation be adjudged bankrupt, all actions for the recovery or protection of the assets of the estate of the bankrupt

must be brought by or in the name of the trustee (*Dean* v. *Shingle*, 198 Cal. 652 [46 A. L. R. 1156, 246 Pac. 1049]); that he is the sole judge of whether any such actions shall be brought, and that the remedy of those beneficially interested in the estate for relief from any neglect or refusal of the trustee to perform his duty is to apply to the federal court to compel him to proceed or remove him for his disobedience or neglect of duty. (*Greene* v. *Moore*, 43 Cal. App. 91 [184 Pac. 506].)

In the present case plaintiffs did not make the corporation a party to the action, nor did they ever make any demand upon the officers thereof or the trustee in bankruptcy to institute the necessary proceedings to collect the moneys here sought to be recovered during the four-year period between the commission of the alleged illegal acts and the commencement of this action. The excuse offered for not having made such demand was that they did not discover the matters complained of until October, 1927, which was some seven months after the termination of the bankruptcy proceedings, and that since then the corporation had been without a regularly constituted board of directors, or other officers upon whom such demand could have been made. We are of the opinion that the trial court was warranted in holding the excuse offered legally insufficient to meet the requirements of the law as declared in the cases above cited for the following reasons: First, it is conceded that under the federal statutes the bankruptcy proceedings could have been reopened at any time within one year after the termination thereof to allow the trustee to commence any action for the recovery of additional assets thereafter discovered; and it affirmatively appears from the complaint herein that although plaintiffs were fully aware of the illegal transactions complained of within approximately seven months after the termination of said proceedings they made no attempt whatever to have said proceedings reopened so that the present action might be instituted by the trustee. And secondly, it affirmatively appears that at the time of the commencement of this action plaintiffs were and that they still are the owners of stock in the corporation; and that being so they have been at all times since the discovery of the alleged unlawful acts in a position to elect a board of directors and other officers of their own choosing, and to proceed in the

name of the corporation to accomplish what they here sought to do as individual stockholders. As held in *Fornaseri* v. *Cosmosart Realty etc. Corp., supra,* before the stockholders may maintain an action on behalf of the corporation they must exhaust their remedies in seeking to bring about the institution of the action by the corporation itself. In this connection plaintiffs assert in their brief that the corporation is "actually dead", and consequently beyond the stage of revival; but if such be the fact, they are in no better position to maintain the action in behalf of the corporation because in the event judgment were given in their favor there would be no corporation to receive the benefit of the large sum of money awarded thereby.

Dealing with the causes of action separately, and directing our attention to the first, it is evident that the same was barred by the provisions of section 359 of the Code of Civil Procedure. Said section provides that " . . . actions against directors or stockholders of a corporation, to recover a penalty or forfeiture imposed, or to enforce a liability created by law . . . must be brought within three years after the discovery by the aggrieved party of the facts upon which the penalty or forfeiture attached, or the liability was created"; and in the case of *Royal Trust Co.* v. *McBean,* 168 Cal. 642 [144 Pac. 139, 143], it has been definitely held that under the terms of the foregoing section an action to enforce "a liability created by law" as distinguished from one "to recover a penalty or forfeiture imposed" must be brought within three years from "the creation of the liability". In so holding the court said: "The fair reading of this section makes the discovery the starting point of the period of limitation only in cases of actions to recover a penalty or forfeiture." Furthermore, it has been definitely held in the case of *Moss* v. *Smith,* 171 Cal. 777 [155 Pac. 90, 94], that the right of action against directors of a corporation conferred by section 309 of the Civil Code is "a statutory right pure and simple, having no foundation in contract, nor existence at common law"; and in *Southern Cal. Home Builders* v. *Young, supra,* it is made clear that such an action is not one to recover "a penalty or forfeiture imposed", because actual damage must be shown, the measure thereof being "the amount by which its capital is depleted by the unlawful dividends". Manifestly, therefore, since

the first cause of action herein was admittedly founded upon a liability created by law, to wit, by section 309 of the Civil Code, and the complaint was not filed within three years after such liability was created, that is to say, within three years after the alleged illegal dividends were declared and paid, the first cause of action was barred by the provisions of section 359.

Plaintiffs contend, however, that section 359 does not apply and that the first cause of action is to be governed by the provisions of subdivision 4 of section 338 of the same code, which fixes a three-year limitation within which to bring an action for relief ''on the ground of fraud or mistake'', but provides further that ''the cause of action in such case [is] not to be deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake''; and in support of such contention they cite and mainly rely upon the case of *Whitten* v. *Dabney,* 171 Cal. 621 [154 Pac. 312]. The complete answer to this contention is that the first cause of action herein is not one for relief on the ground of fraud or mistake. As already shown and as plaintiffs concede, it is one to enforce the liability created by section 309 of the Civil Code; and while, admittedly, the provisions of subdivision 4 of section 338 apply to suits in equity brought by stockholders to redress corporate wrongs based on fraud (6 Cal. Jur. 873), they have no application to actions for the enforcement of a liability created by law, the latter being controlled by the provisions of said section 359. This distinction was clearly pointed out by the court in *Whitten* v. *Dabney, supra,* which was a suit in equity for relief on the ground of fraud. In doing so the court said (p. 628): ''Touching the question of which provision of the statute of limitations is applicable to this action, discussion is indulged in. Unquestionably the right to prosecute this action is governed by the provisions of section 338, subdivision 4, of the Code of Civil Procedure. It is not the action contemplated by section 359 of the same code 'to enforce a liability created by law'.''

With reference to the second and third causes of action, it is true, as already stated, that under certain circumstances stockholders may maintain a suit in equity on behalf of the corporation for redress from fraudulent transactions completed or contemplated by the officers of the cor-

poration in connection with some other party or among themselves or with other shareholders, which has resulted or will result in serious injury to the corporation, and consequently to the shareholders. (*Fornaseri* v. *Cosmosart Realty etc. Corp., supra.*) But as will be noted, the second and third causes of action had no such purpose. According to the allegations thereof the manifest purpose of both was to recover damages accruing to the stockholders individually by reason of certain false and fraudulent representations made to them as to the value of the assets of the corporations at the time they purchased their stock; and it is well settled that in such action the corporation itself has no interest whatever. (*Whitten* v. *Dabney, supra; James* v. *P. B. Steifer Min. Co.,* 35 Cal. App. 778 [171 Pac. 117].) As said in the former case (p. 625) : "Again we must pause to say that these fraudulent representations, however injuriously they may have wronged the purchasers of stock, do not constitute a wrong against the corporation. . . . The right of the individual stockholder thus defrauded would manifestly be simply the right to proceed against the wrongdoers who had made these fraudulent representations to his injury." And in holding to the same effect it was said in the latter case (p. 786) : "As to the misjoinder of causes of action it is undoubtedly true that certain acts of a personal nature resulting in injury to plaintiff individually and not producing any wrong to the corporation have been set forth in the complaint in connection with those of the nature to which we have referred. Such, for instance, is the purchase by plaintiff of his stock by reason of the false representations of said defendants. It does not appear that the corporation was damaged by such purchase. Nor can it be held that the corporation would be benefited by the annulment of said purchase. The disposition of the funds arising from the purchase is manifestly of concern to the corporation upon the theory that it was treasury stock, but if plaintiff by reason of false representations paid for the stock more than it was worth, that is a matter of his personal interest and his wrong should be redressed in a personal action against those who made such representations."

It thus appears, not only that the second and third causes of action were of such a nature that they could not be maintained by stockholders for or on behalf of the cor-

poration, but also that several causes of action were united in one complaint which did not arise out of the same transaction or transactions connected with the same subject of the action, namely, an action against the directors based upon a statutory liability and actions for the recovery of damages accruing to plaintiffs on account of fraudulent representations made to them in the purchase of corporate stock; nor did the several causes of action so united affect all of the parties to the action. Therefore, under the provisions of subdivision 8 of section 427 of the Code of Civil Procedure, the complaint was clearly demurrable on those grounds.

"The theory of appellants . . . " in this regard, say the plaintiffs in their brief, "is not that they are seeking to have such damages as may be recovered [under the second and third causes of action] apportioned among them personally, but . . . that whatever sums are recovered must be delivered to a trustee of the corporation to be appointed so that the same can be apportioned among those who may establish their right to the same." In view of the settled law as declared in the two cases last above cited, however, such theory cannot be accepted. No authority has been cited to· support it, and the result contemplated thereby is wholly speculative. ■ But even though it were possible to ignore the main allegations upon which the second and third causes of action were based, and thereby change the nature of the actions so as to treat the same as actions brought on behalf of the corporation for the recovery of damages accruing to the corporation on account of wrongs committed against it by its officers, they were nevertheless demurrable upon the ground that they failed to set forth any facts whatever to take the causes of action out of the operation of the three-year statute governing actions for relief on the ground of fraud. (Subd. 4, sec. 338, Code Civ. Proc.) As will be remembered, the original complaint was filed more than four years after the consummation of the transactions upon which the second and third causes of action were founded, but in order to escape the effect of the three-year limitation fixed by subdivision 4 of section 338 it was alleged merely that plaintiffs did not discover the matters complained of until October, 1927, more than three years after those transactions took place. It has been held, however, that in the

absence of any facts showing why matters complained of were not sooner discovered, the mere recital that the same were not known or discovered until about a certain date is wholly insufficient to take the case out of the operation of the statute. (*Glindemann* v. *Ehrenpfort,* 29 Cal. App. 87. [154 Pac. 481, 483].) In so holding the court in the case last cited said: "No facts are pleaded showing why the alleged fraud was not sooner discovered. The complaint contains the mere statement that the fraud was not known or discovered by the plaintiff until about the first day of February, 1913. Such an allegation is insufficient to excuse the delay in bringing the action. (*People* v. *San Joaquin Valley etc. Assn.,* 151 Cal. 797 [91 Pac. 740]; *Truett* v. *Onderdonk,* 120 Cal. 581, 589 [53 Pac. 26].)" ▮ True, no duty rests upon stockholders to examine the books or minutes of the corporation, either constantly or at intervals, for the purpose of detecting illegal or fraudulent transactions committed against the corporation or its directors (*Reid* v. *Robinson,* 64 Cal. App. 46 [220 Pac. 676]); nevertheless where the circumstances are such as to put a person of ordinary intelligence and prudence on inquiry, or where there are gross laches in not making any effort to discover the real facts which might have been discovered by the use of slight diligence, the statute of limitations cannot be avoided, and the knowledge which thus might have been obtained is imputed as of the time of the commission of the fraud. (*Bills* v. *Silver King Min. Co.,* 106 Cal. 9 [39 Pac. 43]; *Whitten* v. *Dabney, supra; Beal* v. *Smith,* 46 Cal. App. 271 [189 Pac. 341]; *James* v. *P. B. Steifer Min. Co., supra;* 6 Cal. Jur. 873.) Here the complaint affirmatively shows that all of the transactions complained of appeared of record on the books of the corporation, and that upon making the audit in October, 1927, they were readily discovered. The fact, therefore, that soon after the alleged false representations were made the corporation was adjudged bankrupt would seem to be sufficient to put a person of ordinary intelligence and prudence on inquiry as to its internal affairs. In any event no facts or circumstances whatever were alleged to explain why the audit of the books was deferred for more than two years after the corporation was declared bankrupt, nor why the bringing of this action was delayed until a time when, by reason of the

termination of the bankruptcy proceedings, the creditors would be foreclosed from participating in the distribution of any money plaintiffs by this action sought to recover.

It is well established also that in actions for damages alleged to have been sustained by reason of false and fraudulent representations concerning the value of corporate stock, the measure of damages "is the difference between the value of the stock at the time of the transaction if the alleged representations had been true, and what it was then actually worth" (*Glindemann* v. *Ehrenpfort, supra*); and in the present case the complaint does not set forth the number of stockholders in the corporation, who they were nor how many were injured by the alleged illegal acts, nor the number of shares owned by plaintiffs, nor the value of the stock at any time or under any circumstances. In fact, there is nothing in the complaint to show that at the time the stock was purchased it was not actually worth all or even more than plaintiffs paid for it.

For the reasons and upon the grounds above stated the demurrers, in our opinion, were properly sustained. The judgment is therefore affirmed.

Tyler, P. J., and Cashin, J., concurred.